UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BEGGINS, | No.  2:18-cv-01550-KJM-AC |
| Plaintiff, | |
| v. | ORDER |
| CAROL CARPENTER, et al., | |
| Defendants. | |

Plaintiff David Beggins has moved for an order amending the scheduling order and for leave to file a second amended complaint.  Mot. to Amend ("Mot."), ECF No. 21. Defendants City of Corning ("City defendants" or "the City") oppose, City Opp'n, ECF No. 23, while defendants Carol Carpenter and Brian Carpenter ("Carpenter defendants") do not oppose, Statement of Non-Opp'n, ECF No. 22.  Plaintiff has replied.  Reply, ECF No. 24.  The court submitted the motion without oral argument.  *See* Minute Order, ECF No. 25.

For the reasons set forth below, the court DENIES plaintiff's motion.

I.  FACTUAL AND PROCEDURAL BACKGROUND

A.  Factual Background

This case arises from plaintiff's visit to Rainbow Aviation Services in Corning, California in January 2018 to take a flight training course.  Compl., ECF No. 1, ¶¶ 2, 11.  Plaintiff

1

1   claims he is an individual with physical disabilities, which require him to use a wheelchair,
2   walker and cane for mobility. *Id.* ¶ 1. He alleges when he visited Rainbow Aviation Services,
3   "there were no compliant, accessible handicap parking spaces available for persons with
4   disabilities that complied with the Americans with Disability Act Accessibility Guidelines." *Id.*
5   ¶ 14. In addition, plaintiff claims the path from the parking lot to the business entrance involved
6   "unramped steps." *Id.* ¶¶ 34–35. Upon realizing he would have trouble entering the facility,
7   plaintiff asked Carpenter defendants for a refund, which they denied. *Id.* ¶ 21. Plaintiff pleads
8   that he would like to return to Rainbow Aviation Services, but is deterred from doing so until the
9   defendants "remove the barriers," which are easily removable "without much difficulty or
10  expense." *Id.* ¶¶ 24–26. In March 2018, plaintiff filed a government claim with the City "as a
11  precautionary measure." Mot. at 7.

12          On May 29, 2018, plaintiff filed his complaint in this court. *See generally* Compl.
13  Plaintiff brings state and federal law claims arising from the alleged violations of Title III of the
14  Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act. *Id.* ¶¶ 30–42. In the
15  initial complaint, plaintiff named the following as defendants: (1) Carol and Brian Carpenter,
16  owners of Rainbow Aviation Services, *id.* ¶¶ 2–3; and (2) the City of Corning, owners of the real
17  property at 930 North Marguerite Avenue in Corning, where Rainbow Aviation Services is
18  located, *id.* ¶¶ 4–6. Plaintiff named the City as a defendant in light of Federal Rule of Civil
19  Procedure 19(a), "for purposes of facilitating injunctive relief only," *id.* ¶ 6; plaintiff named the
20  Carpenters as defendants under the Unruh Civil Rights Act, *id.* at 8.

21          As relevant to this motion, plaintiff discovered a lease agreement between the
22  Carpenters and the City through defendants' initial disclosures. Declaration of Elliot
23  Montgomery ("Montgomery Decl.") Ex. 1, ECF No. 21-1 at 5–11 (25-year lease commencing on
24  January 1, 2009 between the Carpenters (lessees/operators) and the City (lessors) for the
25  Carpenters' use of the " 'North and South' City Owned Hangars" to operate Rainbow Aviation
26  Services). Plaintiff asserts two aspects of the lease make the City liable for damages, rather than
27  merely for injunctive relief. First, the agreement provides that the City leases to the Carpenters
28  and the Carpenters lease from the City "that portion of the property describe [sic] in exhibit 'A'

which is identified thereon as 'Administration Building', and 'North and South' City Owned Hangars." Montgomery Decl., Ex. 1 at 5.  Second, the agreement specifies the Carpenters shall provide for "[m]aintenance and upkeep of parking lot and driveway around the administration building. Remove weeds, trash and garbage," as consideration.  *Id.*, Ex. 1 at 6–7.  According to plaintiff, these terms indicate the "leased premises do not include parking facilities," and so responsibility for "inaccessibility of the parking lot and its related pedestrian routes" lies with the City.  Mot. at 5–6.  In his proposed first amended complaint, plaintiff would add a cause of action for violation of Title II of the ADA against the City and another cause of action for violation of the Disabled Persons Act against all defendants.  Proposed First Am. Compl. ("PFAC") ¶¶ 59–96, ECF No. 21-2, Ex. A.

B.    Procedural Background

On May 29, 2018, plaintiff filed the initial complaint against all defendants. Compl. at 8.  All defendants answered.  *See* ECF No. 8, 9.  On August 22, 2018, the court stayed the action to allow the parties to attempt to reach an informal settlement.  Order, ECF No. 11.  Following this court's order, the parties contacted the court's Voluntary Dispute Resolution Program (VDRP), after an unsuccessful attempt to reach an informal settlement.  Clerk's Notice, ECF No. 12.  On April 23, 2019, the parties completed the VDRP process without reaching a settlement; this court then lifted the stay previously imposed and set an initial scheduling conference, Minute Order, ECF No. 15, which it held on May 23, 2019, Minutes, ECF No. 17.  After the conference, this court issued a pretrial scheduling order.  Pretrial Scheduling Order, ECF No. 19.

The parties completed initial disclosures as required by Federal Rule of Civil Procedure 26(a) by May 23, 2019.  Pretrial Scheduling Order at 2.  The court set a fact discovery deadline of April 13, 2020.  *Id.*  In the pretrial scheduling order, the court also cautioned the parties that "[n]o further joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown."  *Id.* (citing Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992)).  Additionally, the court set a dispositive motion hearing deadline of June 12, 2020.  *Id.* at 4.

1          Initial discovery was delayed in this case by virtue of the stay allowing for
2 settlement discussions and participation in the court's VDRP between August 22, 2018 and
3 April 23, 2019.  Reply at 3.  As noted, initial disclosures did not occur until late May 2019, at
4 which point plaintiff evidently received the lease agreement between defendants at issue for the
5 first time.  Supplemental Declaration of Elliot Montgomery ("Supp. Montgomery Decl.") ¶ 4,
6 ECF No. 24-1 at 2.  After plaintiff received the lease agreement, the parties met and conferred on
7 June 20, 2019 and July 2, 2019 to discuss plaintiff's filing an amended complaint.  Montgomery
8 Decl. ¶ 8.  Counsel for the Carpenter defendants stipulated to allow plaintiff to amend the
9 complaint, but counsel for City defendants did not agree.  *Id.*  On July 9, 2019, plaintiff filed the
10 instant motion, which City defendants have opposed.  *See* Minute Order, ECF No. 25.

11          On May 1, 2020, the City's counsel received an email from plaintiff's counsel
12 about meeting and conferring over a separate motion for summary judgment plaintiff intended to
13 file.  *See* Moore Decl. Ex. A (May 1, 2020 email from plaintiff's counsel requesting "availability
14 to meet and confer regarding Plaintiff's upcoming MSJ.").  On May 7, 2020, counsel for both
15 parties met; according to defense counsel, in that meeting he "stated that the City would likely
16 join, or not oppose, such an MSJ as there was no complaint seeking damages from the City."
17 Moore Decl.  ¶ 3.  Upon hearing this statement, plaintiff's counsel "indicated that she thought her
18 client's motion to amend had been granted, and that the amended complaint had been filed." *Id.*
19 Plaintiff's counsel acknowledged her misunderstanding in her declaration to the court: "It was
20 only upon reviewing the case for summary judgment meet and confer phone calls that I became
21 aware that the court had not yet issued a ruling on the FAC."  Gunderson Decl. ¶ 5.

22          On May 12, 2020, plaintiff filed an ex parte request to continue this court's
23 dispositive motion deadline, given the pending motion to amend and the effective deadline of
24 May 15, 2020 for filing a motion for summary judgment to be timely heard under the court's
25 pretrial scheduling order.  Ex Parte Req., ECF No. 26 at 2.  To support this request, plaintiff's
26 counsel included a declaration detailing the timeline of communications between the parties.
27 Declaration of Sara Gunderson ("Gunderson Decl.") ¶¶ 2–4, ECF No. 26-1 at 1–2.  The City
28 opposed this request to extend the dispositive motion cutoff.  Resp., ECF No. 19.  In its

opposition, the City also provided the court with declarations from two of its attorneys.  *See* Declaration of Aaron W. Moore ("Moore Decl.") ¶ 1, ECF No. 29-1 at 1; *see also* Declaration of Michael L. Ricks ("Ricks Decl.") ¶ 1, ECF No. 29-2 at 1.  The Carpenter defendants submitted a statement of conditional non-opposition to plaintiff's ex parte request to extend the cutoff.  Statement of Non-Opp'n, ECF No. 32.

On May 15, 2020, plaintiff filed his motion for partial summary judgment.  Pl.'s Mot. for Partial Summ. J, ECF No. 30.  Defendants Carol Carpenter and Brian Carpenter also filed a motion for summary judgment.  Defs.' Mot. for Summ. J., ECF No. 31.  Plaintiff and City defendants stipulated to a clarification of plaintiff's motion for partial summary judgment.  Stip., ECF No. 33.  The parties agreed the motion for partial summary judgment "does not seek relief from [The City] Defendant" and as a result, the court's ruling will not bind City defendants.  *Id.* at 2.  The court is currently set to hear argument on plaintiff's and Carpenter defendants' cross-motions on August 14, 2020.  Minute Order, ECF No. 40.

II.     LEGAL STANDARD

A party seeking leave to amend pleadings after a deadline specified in the scheduling order must first satisfy Federal Rule of Civil Procedure 16(b)'s "good cause" standard.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992).  Motions for leave to amend pleadings after the court's issuance of a pretrial scheduling order under Federal Rule of Civil Procedure 16 are deemed as motions to modify the scheduling order even when no formal request has been made.  *Id.*  Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Distinct from Rule 15(a)'s liberal amendment policy, Rule 16(b)'s good cause standard focuses primarily on the diligence of the moving party, and its reasons for seeking modification.  *Johnson*, 975 F.2d at 609.

If good cause exists, the movant next must satisfy Rule 15(a).  *Cf. id.* at 608 (citing approvingly *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987), for its explication of this order of operations).  Federal Rule of Civil Procedure 15(a)(2) provides, "[t]he court should freely give leave [to amend the pleadings] when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments."  *Ascon Props, Inc. v. Mobil Oil Co.*,

1   866 F.2d 1149, 1160 (9th Cir. 1989).  "In exercising its discretion 'a court must be guided by the
2   underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or
3   technicalities.'"  *DCD Programs, Ltd. v. Leighton, et al.*, 833 F.2d 183, 186 (9th Cir. 1987)
4   (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  Courts consider five factors
5   in determining whether justice requires allowing amendment under Rule 15(a): "bad faith, undue
6   delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has
7   previously amended the complaint."  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)
8   (citation omitted); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (citing *Western Shoshone*
9   *Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991)).

10  III.    DISCUSSION
11          A.      Rule 16(b): Good Cause
12                  Plaintiff bears the burden of showing good cause exists to modify the scheduling
13  order.  Fed. R. Civ. P. 16(b)(4).  If a party moves to amend its complaint and modify a scheduling
14  order, the court must consider the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed,
> 3) whether the non-moving party would be prejudiced, 4) whether
> the moving party was diligent in obtaining discovery within the
> guidelines established by the court, 5) the foreseeability of the need
> for additional discovery in light of the time allowed for discovery by
> the district court, and 6) the likelihood that the discovery will lead to
> relevant evidence.

19  *City of Pomona v. SQM North Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted).
20                  Here, plaintiff has not shown good cause.  On balance, as reviewed below, the
21  factors listed above do not counsel in favor of the court granting plaintiff's motion.
22                          a)      Imminent Trial
23                  The first factor, whether there is an imminent trial, weighs in favor of the court's
24  granting plaintiff's motion.  There is no trial date set and any potential date is still many months
25  away.
26  /////
27  /////
28  /////

        b)  <u>Opposition to Request</u>

    The request to amend and modify the scheduling order is opposed, but the court notes an opposition does not, standing alone, negate good cause. The substance of defendant City's opposition, however, does weigh against plaintiff, as explained below.

        c)  <u>Prejudice to Defendant</u>

    In response to plaintiff's ex parte request to extend the dispositive motion deadline, the City points out that if the court were to modify only the dispositive motion deadline, the City "will be unable to file their own dispositive motions, propound discovery, take depositions, or reconsider and designate experts," which the City has not done given that plaintiff had not sought damages from the City. Resp. at 3–4.  As plaintiff notes in his ex parte application, he filed this motion near the beginning of the discovery period and it has been pending before the court for many months. Ex. Parte Req. at 5.  The court's delay in resolving the motion cannot be held against plaintiff.  However, the potential prejudice to City defendants remains significant and weighs against plaintiff.  While the prejudice could be offset by reopening discovery, the court need not reach that option given plaintiff's lack of diligence, discussed below.

        d)  <u>Diligence of Moving Party</u>

    The fourth factor, the diligence of the party seeking amendment and extension of discovery, is the primary focus of the good cause inquiry under Rule 16. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing *Johnson*, 975 F.2d at 609).  City defendants argue plaintiff has not been diligent in seeking leave to amend.  Opp'n at 5 (citing *Johnson*, 975 F.2d at 604).  Specifically, the City asserts plaintiff's reading of the lease agreement strains credulity.  According to the City, plaintiff "expects the Court to believe a slight ambiguity (at best)" in the discovered lease agreement is the first piece of information that showed plaintiff that he needed to seek damages from the City to be made whole.  Opp'n at 5.  The City also argues that plaintiff's government claim for greater than $10,000 in damages filed on March 6, 2018, "nearly two months before filing his original complaint," suggests otherwise, because if plaintiff possessed "sufficient facts for his government claim on March 16, 2018," then the same would

                 7

1   hold for his initial complaint in this court.  *Id.*; *see also* Supp. Montgomery Decl. Ex 1 (copy of
2   plaintiff's claim to the City).  The City characterizes plaintiff's "unreasonably" waiting to seek to
3   hold the City liable for damages as "the antithesis to diligence" that cannot support "'good cause'
4   for amendment."  *Id.*  In reply, plaintiff states he filed the government claim "as a precautionary
5   measure in the event facts uncovered via informal disclosures or formal discovery provided
6   evidence of liability on the City's behalf."  Reply at 2.  He argues if he had included "additional
7   allegations at that time [when filing his initial complaint], absent factual contentions with
8   evidentiary support, [he] would have run afoul of […] Rule 11."  *Id.*  Once plaintiff discovered
9   the lease agreement, his counsel filed a motion to amend, which plaintiff believes shows
10  diligence.  *Id.* at 3.

11         Regarding the lease agreement, plaintiff relies solely on a "slight ambiguity (at
12  best)" in the lease agreement as changing his entire understanding of whether the City should be
13  held liable for money damages.  The relevant clauses of the agreement do not on their face clearly
14  provide that only the City is responsible for ADA compliance with respect to the parking lot or
15  the ramp leading into the building.  Rather, plaintiff himself points to clauses in the agreement
16  suggesting at least some responsibility imposed on the Carpenter defendants to maintain the
17  parking lot and entrance to the Rainbow Aviation Services buildings, in compliance with federal,
18  state and local requirements.  Montgomery Decl. Ex. A at 7 ("Lessee/Operator agrees to abide by
19  all applicable laws and regulations of the United States, the State of California, the County of
20  Tehama, and the CITY OF CORNING […] Maintenance and upkeep of parking lot and driveway
21  around the administration building.").

22          Even if the lease agreement clearly assigned the City ultimate responsibility for
23  the failures plaintiff asserts here, the record supports the very strong inference that plaintiff either
24  planned to or thought he had already sought damages from the City at the beginning of this
25  dispute.  Plaintiff not only submitted his March 2018 government claim for damages, but
26  exchanged emails in August 2018 revealing he believed he had sought damages against the City.
27  The City accurately assesses the import of plaintiff's government claim: if plaintiff had the
28  factual basis to assert the City's liability and seek monetary relief in March 2018, he had to have

8

had the same information available to him at the time he filed his complaint in this court, and could have sought damages against the City while complying with Rule 11. Resp. at 4.

The email exchange between the parties about settlement on August 13, 2018, nearly a year before plaintiff filed the instant motion, also exposes plaintiff's lack of diligence. In that exchange, plaintiff's counsel indicated the complaint included a claim for damages against the City. The City's counsel offered to comply with any settlement requiring the City to "authorize any inspections or construction activities on the subject property." Ricks Decl. Ex. A at 5. The City's counsel also specified its settlement offer excluded "any obligations for payment […] and/or for construction related costs and expenses foreseeably required by any such judgment, settlement, or other resolution." *Id.* Plaintiff's counsel rejected this offer, stating: "It appears your client is seeking a dismissal, but will not remediate the violations nor pay the penalties authorized to my client, and that my client need never seek any monetary settlement." *Id.* at 4. In response, the City's counsel asked plaintiff's counsel to reconsider the offer, pointing to the portion of plaintiff's complaint specifying the City is named only as a Rule 19(a) defendant[1]; counsel also clarified the City merely offered "cooperation" while still allowing plaintiff to pursue his damages claims against Carpenter defendants. *Id.* The City's counsel went on in his email to say the City wanted it to make "it clearer on the issue of damages," meaning under the settlement offer, plaintiff "would be free to seek whatever damages and/or injunctive relief to which he may be entitled from the Carpenters, knowing that the City will submit to any resulting injunctive relief (i.e. exactly what your client seeks from the City)." *Id.* A fair reading of this exchange also undermines plaintiff's position that he only obtained sufficient facts to allege financial liability against the City's part a year later when he received the lease agreement. The chronology overall also supports the conclusion that plaintiff's government claim filing was

---

[1] "Persons Required to Be Joined if Feasible. (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19 (a)(1)(A).

1  not merely "precautionary," as plaintiff argues, but instead a reflection of plaintiff's belief from
2  early on that the City actually owed him money damages.

3  Moreover, plaintiff's position during meet and confer discussion with the City's
4  counsel prior to filing for partial-summary judgment also demonstrate plaintiff's lack of
5  diligence. In discussions as recently as May 7, 2020, plaintiff's counsel assumed the court had
6  granted plaintiff's motion for leave to file an amended complaint. Moore Decl. ¶ 3. In other
7  words, plaintiff believed "that he *won the motion and subsequently filed the amended complaint*
8  *pursuant thereto*." Resp. at 3 (emphasis in original). Such an unfounded belief, easily belied by
9  responsibly tracking one's own motions and a regular review of the court's docket, is wholly
10 inconsistent with diligent practice. And diligence, as noted, is central to the court's Rule 16 good
11 cause analysis.

12 Plaintiff cannot satisfy the requirement of diligence. A court's inquiry ends when,
13 as here, the moving party "was not diligent." *Johnson*, 975 F.2d at 604.

14 e)  Conclusion

15 Plaintiff has not shown good cause under Rule 16(b)(4) so as to warrant the
16 court's granting leave to file an amended complaint and amending the scheduling order.

17 B.  Rule 15: Undue Delay and Futility

18 City defendants argue undue delay and futility also support denying plaintiff's
19 motion to amend the complaint under Rule 15. Opp'n at 3–7. In light of Rule 15's policy of
20 favoring amendments, defendants have the burden to show amendment is not in the interests of
21 justice. *DCD Programs*, 833 F.2d at 187. In this case, the court finds amendment is not in the
22 interests of justice, for reasons of undue delay.

23 An unjustified delay is "undue" for the purposes of the Rule 15 analysis. *Western*
24 *Shoshone*, 951 F.2d at 204. It is within the court's discretion to deny leave to amend when the
25 amendment proposes adding new claims that movants knew or should have known about when
26 the earlier pleading was filed. *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946,
27 953 (9th Cir. 2006). The court should consider whether there has been 'undue delay' in the
28 context of the following: (1) the length of the delay measured from the time the moving party

1  obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial date.
2  *Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645, 652 (W.D. Wash.
3  2015) (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir. 1991)).
4        Here, as discussed above, plaintiff's assertions that he did not have sufficient facts
5  to seek money damages from the City when filing his initial complaint are unavailing.  The
6  second and third factors do not weigh against plaintiff here, given that plaintiff filed this motion
7  towards the beginning of the discovery process and long before any potential trial date loomed.
8  The length of the delay prior to plaintiff's filing his motion, however, which is more than a year,
9  outweighs these other factors.
10       Plaintiff's motion also fails under Rule 15, based on his undue delay.
11 IV.   CONCLUSION
12       For the foregoing reasons, the court DENIES plaintiff's motion for leave to amend
13 his complaint.
14       This order resolves ECF Nos. 21 and 26.
15       IT IS SO ORDERED.
16 DATED:  August 12, 2020.

CHIEF UNITED STATES DISTRICT JUDGE

11