1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DAVID BEGGINS,                           No.  2:18-cv-01550-KJM-AC

12                  Plaintiff,

13          v.                                 ORDER

14    CAROL CARPENTER, et al.,

15                  Defendants.

16

17

18          Two motions are before the court: (1) the motion for summary judgment filed by

19    defendants Carol Carpenter and Brian Carpenter ("Carpenter defendants" or "the Carpenters"),

20    Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 31; Defs.' Mem., ECF No. 31-2, and raising

21    jurisdictional questions of standing and mootness; and (2) the motion for partial summary

22    judgment filed by plaintiff David Beggins ("plaintiff" or "Mr. Beggins"), Pl.'s Mot. for Partial

23    Summ. J. ("Pl.'s Mot."), ECF No. 30; Pl.'s Mem., ECF No. 30-1.  The Carpenter defendants

24    opposed plaintiff's motion, Defs.' Opp'n, ECF No. 36, and plaintiff replied, Pl.'s Reply, ECF No.

25    41.  Likewise, plaintiff opposed the Carpenter defendants' motion, Pl.'s Opp'n, ECF No. 37, and

26    the Carpenter defendants replied, Defs.' Reply, ECF No. 39.  Defendants City of Corning ("City

27    defendants") and plaintiff have stipulated plaintiff does not seek relief from or to establish facts

28    against the City defendants as part of plaintiff's motion.  Stip., ECF No. 33.

                                                  1

The court held oral argument on the motions on August 14, 2020, with Bradley Smith appearing for plaintiff, Cris Vaughan appearing for the Carpenter defendants, and Collin Bogener appearing for the City defendants.  As explained below, the court GRANTS the Carpenter defendants' motion for summary judgment on mootness grounds and DENIES plaintiff's motion for partial summary judgment.

I.     FACTUAL AND PROCEDURAL BACKGROUND

      A.     Factual Background

This case arises from plaintiff's visit to Rainbow Aviation Services in Corning, California, in January 2018 to take a flight training course.  Compl., ECF No. 1, ¶¶ 2, 8.  Plaintiff, an individual with disabilities, alleges when he visited Rainbow Aviation Services "there were no compliant, accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines."  *Id.* ¶ 14.  In addition, plaintiff claims the path from the parking lot to the business entrance involved "unramped steps."  *Id.* ¶¶ 14, 34, 35.  Facts relating to the events on that day, subsequent conversations between plaintiff and Carpenter defendants, as well as the relationship between the City and the Carpenters with respect to the facilities comprise the record on both motions before the court.

Both moving parties submitted statements of material facts.  *See* Defs.' Statement of Facts ("DF"), ECF No. 31-4; Pl.'s Statement of Facts ("PF"), ECF No. 30-2.  The Carpenter defendants submitted a statement of disputed material facts in opposition to plaintiff's motion, Defs.' Statement of Disputed Facts ("DSDF"), ECF No. 36-1.  Plaintiff has not submitted a formal statement of disputed facts, but instead references his own statement of material facts as refuting defendants' statement of material facts.  *See generally* Pl.'s Opp'n.  As explained below in the discussion of the parties' arguments, many facts are disputed.

      B.     Procedural Background

On May 29, 2018, plaintiff filed the operative complaint in this court.  *See generally* Compl.  Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act.  *Id.* ¶¶ 30–42.  Plaintiff names the following as

defendants: (1) Carol and Brian Carpenter, owners of Rainbow Aviation Services, *id.* ¶¶ 2–3, for violations of the ADA and the Unruh Civil Rights Act; and (2) the City of Corning, owners of the real property at 930 North Marguerite Avenue in Corning, where Rainbow Aviation Services was located, under Federal Rule of Civil Procedure 19(a) "for purposes of facilitating injunctive relief only," *id.* ¶¶ 4–6.  Specifically, plaintiff seeks injunctive relief "compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act." *Id.* at 8.  In addition, plaintiff seeks damages against the Carpenter defendants under the Unruh Civil Rights Act as well as reasonable attorney fees, litigation expenses and court costs, as provided by 42 U.S.C. § 12205 and Cal. Civ. Code § 52.  *Id.*

On July 25, 2018, the City filed its answer, City Answer, ECF No. 8, and on August 16, 2018, the Carpenters filed their answer, Carpenter Answer, ECF No. 9.  On August 22, 2018, the court stayed this action to allow the parties an opportunity to reach an informal settlement, as its practice in ADA cases generally.  Order, ECF No. 11.  Following this court's order, the parties requested participation in the court's Voluntary Dispute Resolution Program (VDRP), after they unsuccessfully attempted to reach an informal settlement.  Clerk's Notice, ECF No. 12.  On April 23, 2019, the parties completed the VDRP process without reaching a settlement, at which point this court lifted the previously imposed stay and set a pretrial scheduling conference.  Minute Order, ECF No. 15.  On May 23, 2019, the court held a pretrial scheduling conference, Minutes, ECF No. 17, and then issued a scheduling order, Pretrial Scheduling Order, ECF No. 19.  On July 9, 2019, Plaintiff moved for an order amending the scheduling order and for leave to file a second amended complaint to hold the City defendants liable for damages.  Mot. to Amend, ECF No. 21.  The motion to amend is discussed further below.

On May 15, 2020, after meeting and conferring, plaintiff filed this motion for partial summary judgment, Pl.'s Mot., and the Carpenter defendants filed their cross-motion for summary judgment, Defs.' Mot.  With plaintiff's motion to amend still pending before the court, plaintiff and the City defendants stipulated that the motion for partial summary judgment "does not seek relief from [the City] Defendant" and as a result, the court's ruling will not bind City

1    defendants.  Stip. at 2.  On August 12, 2020, the court denied plaintiff's motion to amend,

2    determining the City remains liable only for injunctive relief.  Order, ECF No. 42.

3    II.      LEGAL STANDARD

4            A.      Summary Judgment

5                    A court will grant summary judgment "if . . . there is no genuine dispute as to any

6    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

7    The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

8    resolved only by a finder of fact because they may reasonably be resolved in favor of either

9    party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

10                   The moving party bears the initial burden of showing the district court "that there

11   is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*,

12   477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

13   that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio*

14   *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

15   parts of materials in the record . . .; or show [] that the materials cited do not establish the absence

16   or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

17   support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

18   nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

19   material facts").  Moreover, "the requirement is that there be no genuine issue of material fact

20   . . . . Only disputes over facts that might affect the outcome of the suit under the governing law

21   will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48

22   (emphasis in original).

23                   In deciding a motion for summary judgment, the court draws all inferences and

24   views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

25   587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a

26   _____

27   [1] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases
     decided before the amendment took effect, as "[t]he standard for granting summary judgment
28   remains unchanged."  Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

1   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

2   issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

3   *Co.*, 391 U.S. 253, 289 (1968)).

4          The Supreme Court has taken care to note that district courts should act "with

5   caution in granting summary judgment," and have authority to "deny summary judgment in a case

6   where there is reason to believe the better course would be to proceed to a full trial." *Anderson*,

7   477 U.S. at 255.  A trial may be necessary "if the judge has doubt as to the wisdom of terminating

8   the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507

9   (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)).  This may be

10  the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna,*

11  *Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d

12  at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

13      B.    Standing

14         "To demonstrate standing, a plaintiff must (1) have suffered an injury in fact—an

15  invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

16  imminent, not conjectural or hypothetical; (2) there must be a causal connection between the

17  injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged

18  action of the defendant, and not . . . the result [of] the independent action of some third party not

19  before the court; and (3) it must be likely as opposed to merely speculative, that the injury will be

20  redressed by a favorable decision." *Pritikin v. Dep't of Energy,* 254 F.3d 791, 796–97 (9th Cir.

21  2001) (internal quotations and citations omitted) (alterations in original).  "[W]hen an ADA

22  plaintiff has suffered an injury-in-fact by encountering a barrier that deprives him of full and

23  equal enjoyment of the facility due to his particular disability, he has standing to sue for

24  injunctive relief as to that barrier and other barriers related to his disability." *Chapman v. Pier 1*

25  *Imports,* 631 F.3d 939, 944 (9th Cir. 2011).  A plaintiff can establish standing "either by

26  demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a

27  noncompliant facility." *Id.*

28  /////

5

1    "The party asserting federal jurisdiction bears the burden" of demonstrating he has

2    standing at every stage of litigation.  *Krottner v. Starbucks Corp.,* 628 F.3d 1139, 1141 (9th Cir.

3    2010); *see also Chapman,* 631 F.3d at 946.

4    C.    Mootness

5    "If the court determines at any time that it lacks subject-matter jurisdiction, the

6    court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  The court lacks subject matter

7    jurisdiction if the controversy is moot.  *See North Carolina v. Rice,* 404 U.S. 244, 246 (1971).

8    "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally

9    cognizable interest in the outcome."  *County of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (quoting

10    *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  "The basic question in determining mootness

11    is whether there is a present controversy as to which effective relief can be granted."  *Nw. Envtl.*

12    *Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

13    III.    DISCUSSION

14    Because the Carpenter defendants' motion raises standing and mootness issues,

15    which are threshold jurisdictional matters, the court first considers their motion.  The Carpenter

16    defendants argue specifically plaintiff lacks standing to pursue his claims and that plaintiff's

17    claims are now moot.  Defs.' Mem. at 2.  The Carpenters request the court dismiss plaintiff's

18    ADA claims and decline to exercise supplemental jurisdiction over plaintiff's California law

19    claims.  *Id.*  As explained below, the court GRANTS defendants' motion for summary judgment

20    on mootness grounds.

21    A.    Carpenter Defendants' Motion for Summary Judgment

22    1.    Standing

23    The Carpenter defendants argue plaintiff lacks standing because he will likely not

24    return to Rainbow Aviation Services; therefore, they say, "a real and immediate threat of repeated

25    injury" does not exist.  Defs.' Mem. at 4 (quoting *Chapman*, 631 F.3d at 946).  In opposition,

26    plaintiff argues he faces a continuing injury and meets standing requirements because he had

27    planned "to return every year for refresher courses" but has not done so because he knows "the

28    same discriminatory conditions persists [sic]."  Pl.'s Opp'n at 21–22.  Plaintiff's argument is not

1    supported by his declaration, in which he does not say anything about wanting to return.  *See*

2    *generally* Declaration of David Beggins ("Beggins Decl."), ECF No. 30-5.

3         "[A]n ADA plaintiff can establish standing to sue for injunctive relief either by

4    demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a

5    noncompliant facility."  *Chapman*, 631 F.3d at 944 (holding plaintiff failed to prove "he

6    personally suffered discrimination as defined by the ADA" and lacked standing in case in which

7    he "also requested monetary damages pursuant to provisions of California law.").  A plaintiff

8    suing under the ADA must demonstrate "he personally suffered discrimination as defined by the

9    ADA as to the encountered barriers on account of his [particular] disability."  *Id.* at 944, 947.

10   Indeed, to prevail on a claim for a violation of the ADA, a plaintiff must show the barrier

11   "interfere[d] with the plaintiff's 'full and equal enjoyment' of the facility."  *Id.* at 947 (citing

12   42 U.S.C. § 12182(a)).

13        Regarding deterrence, the Ninth Circuit found in *Pickern v. Holiday Quality*

14   *Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002), that "the plaintiff had Article III standing

15   because 'a disabled individual who is currently deterred from patronizing a public

16   accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury'

17   for standing purposes.'"  *Chapman,* 631 F.3d at 950 (quoting *Pickern,* 293 F.3d at 1138).  The

18   court further held, given the plaintiff's allegations he "'would shop at [the defendant's store] if it

19   were accessible,' the threat of injury was sufficiently 'imminent' to permit him to sue for

20   injunctive relief."  *Id.* (quoting *Pickern,* 293 F.3d at 1138)); *see also Doran v. 7–Eleven, Inc.,*

21   524 F.3d 1034, 1040–41 (9th Cir. 2008) (holding plaintiff's injury was "actual or imminent"

22   when he lived 500 miles away from store, but said in deposition he planned to return on annual

23   trips to Disneyland once store's accessibility problems were "fixed").

24        "Even if he is not deterred from returning to the public accommodation at issue," a

25   plaintiff has standing to sue for injunctive relief when he has demonstrated an "injury-in-fact

26   coupled with an intent to return to a noncompliant facility."  *Chapman*, 631 F.3d at 944.  "It is

27   well settled that a plaintiff need not 'await the consummation of threatened injury to obtain

28   prospective relief.'"  *Id.* at 950 (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (additional

                                                  7

1   citations omitted)).  Instead, standing "requires a sufficient showing of likely injury in the future

2   related to plaintiff's disability," based on a court's finding "it is reasonable to infer" plaintiff

3   intends to return to the same premises in the future.  *Id.* at 949 (citing *Camarillo v. Carrols Corp.*,

4   518 F.3d 153 (2d Cir. 2008)).

5         Here, on the one hand, the Carpenters demonstrate there is no genuine dispute

6   regarding whether the allegedly non-compliant facilities currently deter plaintiff from returning to

7   Rainbow Aviation Services and whether plaintiff has shown a specific intent to return.  As noted,

8   the Carpenter defendants provide evidence they do not hold any "annual refresher courses";

9   rather, the 15-day "Light Sport Repairman Maintenance Course," the course plaintiff attended for

10  less than a day, is the only course they offer.  Defs.' Reply at 2 (citing Declaration of Carol

11  Carpenter ("C. Carpenter Decl. III") ¶ 2, ECF No. 39-1).  The lack of accessible parking and a

12  path into the building cannot deter plaintiff from returning "every year for refresher courses"

13  when these refresher courses do not exist.  Plaintiff's arguments cannot rebut the sworn

14  statements in Mrs. Carpenter's declarations.  *Id.*  In any event, there are no classes at all at the

15  school in Corning, as the City has evicted the Carpenter defendants and they no longer control the

16  property.  Pl.'s Opp'n at 21 (citing *Civ. Rights Educ. And Enf't Ctr. v. Hosp. Properties Tr.*,

17  867 F.3d 1093, 1100–01 (9th Cir. 2017) for proposition that an injury can continue only "so long

18  as equivalent access is denied.")).  While the Carpenters now operate a school in Kingsville,

19  Missouri, plaintiff does not make any claims regarding the conditions at that new location.  *See*

20  Declaration of Carol Carpenter ("C. Carpenter Decl. II") ¶¶ 10–11, ECF No. 36-2.  Under these

21  circumstances, there can be no entrance or parking conditions in Corning that continue to block

22  plaintiff's access to the flight training he desires.

23        To support their argument that plaintiff has failed to show a current intent to return

24  to Rainbow Aviation Services in Corning, California, the Carpenter defendants also point to the

25  following facts: (1) plaintiff is a resident of Montana, more than 1,000 miles from Corning, which

26  makes him less likely to return; (2) his single visit to the facility for a one-time course is not "past

27  patronage" sufficient to show a likelihood of return; (3) neither his complaint nor his statements

28  to Mrs. Carpenter allege an intent or viable plan to return, given that plaintiff claims only that he

8

1   would like to attend a non-existent refresher course; and (4) he has not alleged frequent previous

2   or future travel in the vicinity of the Corning airport, further indicating a low likelihood of return.

3   Defs.' Mem. at 5 (citing Declaration of Carol Carpenter ("C. Carpenter Decl. I") ¶ 5, ECF No.

4   31-2 at 2); *see also* Defs.' Reply at 2–3.  Defendants are correct that the undisputed facts they

5   identify mean plaintiff cannot show there is a question for the factfinder regarding his current

6   intent to return to the Carpenter defendants' allegedly non-compliant facility.  There simply is no

7   factual support for plaintiff's claims the discriminatory conditions currently deter him from

8   returning to the facility.  That is not the end of the standing analysis, however.

9              The court must consider whether discriminatory conditions deterred plaintiff or he

10   had a specific intent to return at the time he filed his complaint, as opposed to when defendants

11   filed their motion.  This is because standing "turns on the facts as they existed at the time the

12   plaintiff filed the complaint."  *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832,

13   838 (9th Cir. 2007).  When plaintiff filed his complaint, and for approximately a year thereafter,

14   Rainbow Aviation Services operated at the airport in Corning.  *Compare* Compl. at 8 ("Dated:

15   May 27, 2018") *with* C. Carpenter Decl. I ¶¶ 8–11 ("[O]ur final class was completed in

16   September 2019.").  As pled in his complaint, the alleged barriers deterred plaintiff from

17   returning to the Carpenter defendants' business to complete the course.  Compl. ¶¶ 24, 28.

18   Because the City had not evicted the Carpenter defendants when plaintiff filed his complaint,

19   plaintiff could have returned to the school and thus could have been deterred at the time.

20   Additionally, plaintiff avers the ADA violations deterred him from returning for the remainder of

21   the first day, and the subsequent 14 days, of the initial flight course.  *See* Beggins Decl. ¶¶ 11–15.

22   When plaintiff informed defendants of his physical disabilities, they allegedly told him "to work

23   through the current conditions at the Rainbow Aviation Services, as they did not offer

24   accommodations."  *Id.* ¶ 12.  Plaintiff had paid in full for the course with a $3,895 credit for

25   deposit and tuition, and the Carpenter defendants did not refund him any amount.  *Id.* ¶ 14; *see*

26   *also* Pl.'s Ex. 4 (redacted bank statement showing plaintiff's payment to Rainbow Aviation

27   Services), ECF No. 30-7.

28   /////

1     Mrs. Carpenter's declaration is the only evidence Carpenter defendants offer on

2  whether their allegedly ADA non-compliant facility deterred plaintiff from returning.  Mrs.

3  Carpenter declares plaintiff said he could not complete the course and did not contact her upon

4  leaving during the first day of class, despite her offering to allow him to complete the course with

5  a partner.  C. Carpenter Decl. I ¶¶ 5–6.  She does not explain how pairing with a partner would

6  have provided plaintiff with access to the course.  Plaintiff's own declaration, which the court

7  discusses above, demonstrates a genuine dispute of  the following facts: whether plaintiff told

8  Mrs. Carpenter he had difficulty using any of the exterior or interior facilities where the course

9  was being held, whether plaintiff informed defendants he would not be returning to the school

10  because of the non-compliant facilities, whether Mrs. Carpenter refused to provide physical

11  accommodations such as disabled parking and ramped steps in front of the entrance to the school

12  and whether defendants refused to refund plaintiff $3,895 for the tuition he paid for the course.

13  Beggins Decl. ¶¶ 11–15.  These conflicting accounts, about whether the non-compliant facility

14  deterred plaintiff from returning, raise at least a triable issue with respect to standing.

15     The Carpenter defendants have not met their burden on summary judgment of

16  demonstrating that plaintiff lacks standing as a matter of law.  The court next turns to the

17  Carpenters' argument that plaintiff's ADA claim is moot.

18          2.     Mootness

19     The Carpenters also assert plaintiff's ADA claim is moot because Rainbow Airport

20  Services "is now permanently closed and relocated out of state"; therefore "[p]laintiff cannot be

21  subject to repeated injury in the future."  Defs.' Mem. at 6; *see also* Defs.' Reply at 3.  Plaintiff

22  contends his claim is not moot, because the Carpenters have yet to vacate the Corning property.

23  Pl.'s Opp'n at 22.

24     An ADA claim is moot if the premise complained of closes with no plans to

25  reopen or if the defendant no longer owns or controls the challenged premises.  *See, e.g.*, *Kohler*

26  *v. Southland Foods*, Inc., 459 Fed. Appx. 617, 619 (9th Cir. 2011) (affirming ADA claim as moot

27  where defendant closed restaurant); *Johnson v. Lake Tahoe Partners*, 2014 WL 2548830, at *3

28  (E.D. Cal. June 5, 2014) (ADA claim moot when restaurant unconditionally vacated premises and

10

1    permanently closed restaurant); *Steelman v. Hoch*, No. 12–79, 2012 WL 4513864, at *1 (E.D.

2    Mo. Oct. 1, 2012) (ADA claim moot where defendant was selling premises and restaurant tenant

3    no longer in business).

4              Here, the Carpenter defendants have provided evidence showing they no longer

5    control the premises in question and have no plans to reopen the school in Corning, meeting their

6    initial burden to show no genuine dispute exists.  Specifically, through their declarations, the

7    Carpenters inform the court they have conducted no courses or other activities open to the public

8    at the Corning Airport since September 2019, when the City initiated eviction proceedings against

9    them.  DF 13, 14, 15, 16; *see also* C. Carpenter Decl. I ¶¶ 8–11 ("Since our final class was

10   completed in September 2019, we have offered no new courses or conducted other activities open

11   to the public at the Corning Airport […] We have permanently terminated all business activities

12   at the leased premises at the Corning Airport and have agreed with the City to terminate the

13   lease."); Defs.' Ex. B, ECF No. 31-3 (copy of eviction letter).

14             With the burden then shifting to plaintiff, the court asks whether plaintiff has

15   shown there is a genuine dispute regarding a material fact precluding summary judgment.

16   Plaintiff has not offered any admissible evidence raising a question regarding whether the

17   Carpenters have vacated the Corning premises.  Defs.' Reply at 3; *see also* DF 15, 16.  Plaintiff

18   argues the eviction notice is immaterial to the court's analysis, because the City's counsel

19   informed plaintiff's counsel that Carpenter defendants had yet to vacate their leased space at the

20   Corning airport as of September 2019.  Pl.'s Opp'n at 22.  But plaintiff provides no evidentiary

21   support for this argument, in the form of a declaration from the City's counsel or recent pictures

22   of the premises or otherwise.

23             The evidence plaintiff does provide is outdated, in that it dates to a time period

24   before September 2019 when the Carpenters aver they ceased doing business.  Plaintiff includes a

25   declaration from his investigator and pictures of the relevant buildings with signs for "Rainbow

26   Aviation Services," but the investigator took these pictures in February 9, 2018, more than a year

27   before the City evicted the Carpenters.  Pl.'s Ex. 7, ECF No. 30-10 (photographs taken by

28   investigator); *see also* Declaration of Tim Wegman ("Wegman Decl.") ¶¶ 2–3, ECF No. 30-9

                                                    11

1   (declaration of investigator).  Plaintiff also provides a copy of the Carpenters' responses to

2   plaintiff's requests for admission, admitting they are the owners of Rainbow Aviation Services in

3   Corning.  Pl.'s Ex. 8, ECF No. 30-11, at 4 (Defs.' Resp. to Req. for Admissions Propounded by

4   Pl.).  But the responses are dated July 22, 2019, a month before the City evicted the Carpenters

5   and they then moved to Missouri.  *Id.* at 9.

6           Moreover, at hearing, counsel for the Carpenter defendants and the City each

7   represented that the eviction proceedings had been completed, with the Carpenter defendants'

8   lease officially terminated on August 31, 2020.  Given the totality of the record before the court,

9   there is no genuine dispute regarding the Carpenter defendants' control of the Corning premises

10   or lack thereof.

11           While plaintiff argues it is significant  that he does not seek injunctive relief from

12   the Carpenter defendants, while he does seek such relief from the City, Pl.'s Opp'n at 23; *see also*

13   Compl. at 8, this distinction does not change the court's mootness analysis.  An ADA claim is

14   moot when a defendant closes a place of public accommodation where the alleged violation

15   occurred.  *See Kohler*, 459 Fed. Appx. at 618 (plaintiff's action for injunctive relief under ADA

16   and additional relief under California's Unruh Act moot when one defendant "closed the

17   restaurant that was the subject of Kohler's ADA action").  The Carpenter defendants' eviction

18   from the Corning premises means plaintiff's federal claim is "no longer 'live.'"  *County of L.A.*,

19   440 U.S. at 631 (additional citations omitted).  And even though the Unruh Civil Rights Act

20   incorporates ADA violations as an element, claims under the Unruh Civil Rights Act do not

21   "arise under" federal law for jurisdictional purposes.  *See Kohler*, 459 Fed.Appx. at 619.

22           3.     Supplemental Jurisdiction

23           Given the mootness of any federal claim, the court considers whether to continue

24   exercising supplemental jurisdiction over plaintiff's California law claims.  Generally, "[a]

25   federal district court with power to hear state law claims has discretion to keep, or decline to

26   keep, [the state law claims] under the conditions set out in § 1367(c)."  *Acri v. Varian Assoc.,*

27   *Inc.,* 114 F.3d 999, 1000, *as supplemented by* 121 F.3d 714 (9th Cir. 1997).  In deciding whether

28   /////

1   to exercise supplemental jurisdiction, a court should consider judicial economy, convenience,

2   fairness and comity.  *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966).

3            As the Carpenter defendants correctly observe, "a district court may 'decline to

4   exercise supplemental jurisdiction over a [state law] claim' […] when 'the district court has

5   dismissed all claims over which it has original jurisdiction.'"  Pl.'s Mem. at 6 (citing 28 U.S.C.

6   § 1367(c)(3)).  Other courts in this district have declined to exercise supplemental jurisdiction

7   over state law claims after dismissing a plaintiff's ADA claims.  *See Wyatt v. Rug Emporium*, No.

8   1:15-CV-1414-AWI-SMS, 2016 WL 2990598 (E.D. Cal. May 24, 2016); *Pappion v. R-Ranch*

9   *Prop. Owners Ass'n*, 110 F. Supp. 3d 1017, 1026 (E.D. Cal. 2015).  Here none of the factors

10  applicable weigh in favor of retaining supplemental jurisdiction: neither judicial economy nor

11  convenience will be achieved if the court keeps the case, no unfairness will result if it does not,

12  and comity suggests a state court is the best forum for resolving the remaining state claims.  The

13  court thus declines to exercise supplemental jurisdiction over plaintiff's remaining California law

14  claims.  Because the court finds plaintiff's claims moot, there is no need for the court to reach

15  plaintiff's motion for partial summary judgment.

16            4.      Conclusion

17            The court GRANTS the Carpenter defendants' motion for summary judgment on

18  mootness grounds and DECLINES to exercise supplemental jurisdiction over plaintiff's

19  California law claims.  As a result the court need not reach plaintiff's motion for partial summary

20  judgment, which is mooted by this resolution.

21  IV.    CONCLUSION

22            For the foregoing reasons, the court GRANTS the Carpenter defendants' motion

23  for summary judgment and DENIES plaintiff's motion for partial summary judgment as MOOT.

24            This order resolves ECF Nos. 30 and 31.  The Clerk of Court is directed to CLOSE

25  the case.

26            IT IS SO ORDERED.

27  DATED:  December 8, 2020.

28                                                    CHIEF UNITED STATES DISTRICT JUDGE